Approved: _____
HAGAN SCOTTEN
Assistant United States Attorney

Before: HONORABLE GABRIEL W. GORENSTEIN
United States Magistrate Judge
Southern District of New York

**15 MAG 791**

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

    - v. -

YUDY CENTENO and JOSE SORIA,

    Defendants.

- - - - - - - - - - - - - - - - - x

**AMENDED COMPLAINT**

Violations of
18 U.S.C. §§ 371, 473, and 2

COUNTY OF OFFENSE:
NEW YORK

DOC # 10

SOUTHERN DISTRICT OF NEW YORK, ss.:

    JAMES SAUNDERS, being duly sworn, deposes and says that he is a Special Agent with the United States Secret Service (the "Secret Service") and charges as follows:

COUNT ONE

    1. From at least on or about October 1, 2013, up to and including in or about February, 2015, in the Southern District of New York and elsewhere, YUDY CENTENO and JOSE SORIA, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit an offense against the United States, to wit, to violate Title 18, United States Code, Section 473.

    2. It was a part and an object of the conspiracy that YUDY CENTENO and JOSE SORIA, the defendants, and others known and unknown, willfully and knowingly, did buy, sell, exchange, transfer, receive, and deliver false, forged, counterfeited, and altered obligations and other securities of the United States, with the intent that the same be passed, published, and used as true and genuine.

## OVERT ACTS

3.  In furtherance of said conspiracy and to effect its illegal object, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

    a.  In or about November 2013, YUDY CENTENO and JOSE SORIA, the defendants, arranged by telephone to sell counterfeit United States currency to another individual then known by CENTENO to be calling from New York, New York, which purchases were then completed in Queens, New York.

(Title 18, United States Code, Section 371.)

## COUNT TWO

4.  From at least on or about October 1, 2013, up to and including in or about February, 2015, in the Southern District of New York and elsewhere, YUDY CENTENO and JOSE SORIA, the defendants, willfully and knowingly did buy, sell, exchange, transfer, receive, and deliver false, forged, counterfeited, and altered obligations and other securities of the United States, with the intent that the same be passed, published, and used as true and genuine, to wit, CENTENO and SORIA received and sold counterfeit United States Currency in New York, New York, and elsewhere.

(Title 18, United States Code, Sections 473 and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

5.  I am a Special Agent with the Secret Service, and have served in such position for approximately four years. I am personally involved in the investigation of this matter. This affidavit is based upon my conversations with other law enforcement officers, my examination of reports and records prepared by law enforcement officers, and my involvement in this investigation. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

6.  Another Special Agent in the Secret Service ("Special Agent-1") has been involved in the investigation of YUDY CENTENO, the defendant, since in or about 2010. From Special Agent-1, and the records and evidence compiled during Special Agent-1's investigation, I have learned the following:

   a.  Since at least 2009, or before, the Secret Service has been investigating a particular form of counterfeit United States Treasury Instruments ("CFT"), which bears specific identifiers that have been sourced to plants in Peru, and which are not consistent with those of genuine United States currency ("USC"). These specific identifiers include, but are not limited to, check letters and numbers, front and back plate numbers, series year, type of paper and ink, the lack of micro printing on the notes, and the use of the same serial numbers for multiple $100 notes.

   b.  The Secret Service has investigated CENTENO for trafficking in CFT since at least 2009, based on information learned during the investigation of a co-conspirator ("CC-1") not named as a defendant herein. In or about 2009, CC-1, who is related to CENTENO, was arrested for trafficking in CFT and deported to Peru. Secret Service and other law enforcement officials believe CC-1 remains in Peru and participates in the manufacture of the CFT at issue in this Complaint.

   c.  On or about October 30, 2013, a cooperating witness (the "CW")[1] purchased $10,000 CFT from CENTENO, in exchange for $2,600 USC. During the transaction, CENTENO stated that an unknown male, later identified to be JOSE SORIA, the defendant, had been holding the CFT prior to the transaction. This transaction was observed by undercover law enforcement officers and was consensually recorded by the CW. After the transaction, Special Agent-1 examined the CFT and confirmed that it is in fact counterfeit.

   d.  On or about November 7, 2013, the CW called CENTENO from New York, New York, to arrange a purchase of $100 CFT notes (the "November 7th Call"). During the November 7th Call, the CW and CENTENO discussed facts making it clear to CENTENO that the CW was calling from New York, New York.

---

[1] The CW is cooperating with law enforcement pursuant to a cooperation agreement in hopes of receiving leniency at sentencing. Information provided by the CW has proven reliable on numerous occasions, and has been corroborated by consensual recordings, surveillance, and physical evidence.

e.  On or about November 8, 2013, the CW purchased $20,000 CFT from CENTENO, in exchange for $5,200 USC, as had been arranged during the November 7th Call. This transaction was observed by undercover law enforcement officers and was consensually recorded by the CW. After the transaction, Special Agent-1 examined the CFT and confirmed that it is in fact counterfeit.

f.  On or about November 20, 2013, the CW purchased $20,000 CFT from SORIA, in exchange for $5,200 USC. This transaction was observed by undercover law enforcement officers and was consensually recorded by the CW. After the transaction Special Agent-1 examined the CFT and confirmed that it is in fact counterfeit.

g.  On or about January 24, 2014, the CW informed Special Agent-1 that CENTENO, who was then in Peru, had arranged for SORIA to make another sale of CFT to the CW. Also on or about January 24, 2014, the CW purchased $35,100 CFT from SORIA in exchange for $5,200 USC. This transaction was observed by undercover law enforcement officers and was consensually recorded by the CW. After the transaction, law enforcement officers observed SORIA entering a residential building in the vicinity of 112-14 39th Avenue, Queens, New York. Also after the transaction, Special Agent-1 examined the CFT and confirmed that it is in fact counterfeit.

h.  On or about January 27, 2014, Special Agent-1 confirmed SORIA's identity by locating commercial records associating the name "Jose Soria" with the address 112-14 39th Avenue, Queens, New York, and by comparing photographs of SORIA taken by the CW with images of "Jose Soria" found on the Facebook internet service ("Facebook").

i.  On or about February 11, 2014, the CW met with SORIA to discuss a new CFT version of the $100 bill that SORIA could provide in future transactions. SORIA gave the CW a single CFT $100 note as a sample. The CW gave SORIA $3,300 USC to complete payment for a previous purchase. The CW made a consensual audio recording of this meeting.

k.  On or about November 5, 2014, the CW met with CENTENO and discussed future large scale transactions of CFT. CENTENO informed the CW that in the short term the CW could continue to purchase CFT on the previous scale from SORIA. CENTENO provided the CW with a single CFT $100 note as a sample

4

of the CFT to be provided in future transactions. The meeting was consensually recorded by the CW. Secret Service agents examined the note obtained in the meeting and confirmed that it is in fact counterfeit.

7. From in or about December 2014, I have been involved in the investigation of YUDY CENTENO and JOSE SORIA, the defendants. In the course of this investigation, I have learned, in substance and in part:

    a. From on or about January 23, 2015, to on or about February 9, 2015, the Customs and Border Patrol ("CBP") inspected six packages (the "Packages") as they entered the United States from Peru. The Packages contained, in total, approximately $855,000 CFT. The Packages used similar packing methods and materials, and were addressed to residential buildings in Brooklyn, Queens, and Nassau County, New York.

    b. On or about February 4, 2015, I and other law enforcement officers made a controlled delivery of one of the Packages to its destination address. The occupant ("Occupant-1") accepted delivery, but did not open the package. When questioned, Occupant-1 stated that a man named "Jose Soria" and resembling SORIA's description had previously lived at the address. I recovered mail from the destination address addressed to "Jose Soria."

    c. On or about February 10, 2015, I and other law enforcement officers made a controlled delivery of one of the Packages to its destination address. The occupants ("Occupant-2" and "Occupant-3") accepted delivery and opened the package. When questioned, Occupant-2 and Occupant-3 stated that they had opened the package only because the package listed a sender in Peru and Occupant-2 and Occupant-3 are from Peru. Occupant-2 and Occupant-3 stated that a man named "Jose Soria" and resembling SORIA's description had previously lived at the address.[2]

---

[2] The other Packages were not delivered, either because no one would accept delivery or because delivery was not attempted, in two instances because the delivery address was fictitious. Based on my training and experience, I believe that CENTENO, SORIA, and other conspirators known and unknown intentionally sent the Packages to addresses that were unlikely to accept delivery. This would cause the Packages to be returned to a courier's distribution center, where the conspirators could

8.  Based on the preceding information, on or about March 12, 2015, this Court issued arrest warrants for YUDY CENTENO and JOSE SORIA, the defendants, as described in a complaint lodged in this Court and captioned *United States v. Centeno*, 15 Mag. 0791. In the course of apprehending CENTENO and SORIA, I learned the following:

    a.  On or about March 19, 2015, the CW met with CENTENO. I had asked the CW to explore another sale of CFT from SORIA, so that law enforcement could locate SORIA, whose whereabouts were then unknown. During that meeting CENTENO proposed that the CW and CENTENO kidnap SORIA's minor child in order to obtain a ransom from SORIA. CENTENO stated that she was dissatisfied with SORIA's performance as a business partner, and believed that SORIA was then in possession of, or able to obtain, approximately $100,000 USC, which SORIA would, CENTENO believed, pay for the return of his child. When the CW reported this proposal to me, I viewed this as a credible threat because I know from Special Agent-1 and other law enforcement officers that CENTENO is associated with violent street gangs in the United States that distribute CFT, and with a violent narcotics and CFT trafficking organization in Peru.

    b.  Also on or about March 19, 2015, after the CW met with CENTENO and after the CW relayed CENTENO's kidnapping proposal to me, the CW made a consensually recorded call to CENTENO at the direction of law enforcement. The purpose of this call was in part to confirm that CENTENO had proposed kidnapping SORIA's child. On that call, CENTENO stated, in substance and in part:

        i.  That CENTENO wanted the CW to "take" SORIA's son in order to "frighten" SORIA into paying money.

        ii. That CENTENO believed SORIA would not go to the police because of his immigration status, and that SORIA could, given some time, obtain $100,000 USC, which he would pay for the release of his son.

        iii. That in the coming week CENTENO would gather information on where SORIA's son could be located so that he could be kidnapped.

---

obtain the Packages using false identification and without tying the Packages' receipt to any address.

        c.    On or about March 20, 2015, I and other law enforcement officers arrested CENTENO. After being advised of her *Miranda* rights, CENTENO made numerous statements acknowledging her role and the role of SORIA in trafficking CFT imported from Peru.

        d.    Also on or about March 20, 2015, I and other law enforcement officers arrested SORIA. After being advised of his *Miranda* rights, SORIA made numerous statements acknowledging his role and the role of CENTENO in trafficking CFT imported from Peru. In addition, after listening to the recorded call in which CENTENO expressed a desire to kidnap his son, SORIA stated that CENTENO had recently been asking him questions concerning the location of his family.

        WHEREFORE, deponent respectfully requests that YUDY CENTENO and JOSE SORIA, the defendants, be imprisoned or bailed as the case may be.

                                    JAMES SAUNDERS
                                    Special Agent
                                    United States Secret Service

Sworn to before me this
~~20~~ 24th day of March, 2015

_____
THE HONORABLE GABRIEL W. GORENSTEIN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK